IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IGOR BELYAKOV                    :

                                :

    v.                          :        Civil Action No. DKC 2006-2973

                                :

MICHAEL O. LEAVITT              :

                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment
discrimination case are (a) the motion of Plaintiff Igor Belyakov
to commence discovery (Paper 15) and (b) the motion of Defendant
Michael O. Leavitt, Secretary of the United States Department of
Health and Human Services, to dismiss or in the alternative for
summary judgment (Paper 16).  The issues are fully briefed and the
court now rules pursuant to Local Rule 105.6, no hearing being
deemed necessary.  For the reasons that follow, Plaintiff's motion
will be denied and Defendant's motion will be granted.

**I. Background**

Plaintiff Igor Belyakov, a United States citizen of Russian
origin, was employed by Defendant, the United States Department of
Health and Human Services ("HHS"), as a staff scientist in the
National Institute of Health ("NIH") at the National Cancer
Institute.  In 1996, Defendant hired Plaintiff to work as a senior
postdoctoral fellow in the laboratory of Dr. Jay A. Berzofsky.  In
2001, Dr. Berzofsky promoted Plaintiff to the position of staff
scientist.  The appointment to staff scientist was for a five year

period with the option to renew it for an additional one to five years. (Paper 16, Ex. 18).

In 2002, Plaintiff applied for a tenure-track position in the National Institute of Dental and Craniofacial Research ("NIDCR"), another institute within NIH. Plaintiff was not selected for the position. Plaintiff's non-selection for this position formed the basis of a national origin discrimination claim pending before this court. *See Belyakov v. Thompson*, No. DKC-04-4008 (D.Md. filed Dec. 23, 2004).

Plaintiff alleges that Dr. Berzofsky began retaliating against him after he filed his federal lawsuit. (Paper 1 ¶ 14). Plaintiff alleges that Dr. Berzofsky committed the following acts of retaliation: (1) falsely accusing Plaintiff of insubordination on February 17, 2005 and April 21, 2005 (*id.* ¶ 15); (2) issuing a written reprimand to Plaintiff on May 27, 2004 (*id.* ¶ 17); (3) informing Plaintiff that his staff scientist appointment would not be renewed on November 7, 2005 (*id.* ¶ 18); and (4) refusing to interview him for new positions (*id.* ¶ 19). Plaintiff requests a declaratory judgment that the conduct engaged in by Defendant violated Plaintiff's rights, an injunction enjoining Defendant from engaging in such conduct in the future, an award of back pay, an order directing Defendant to hire Plaintiff for the first available tenured position, compensatory damages, and attorney's fees.

In lieu of an answer, Defendant filed a motion to dismiss, or in the alternative, for summary judgment.   Defendant argues that Plaintiff's allegation that his appointment as a staff scientist was not renewed in retaliation for his prior protected activity is the only issue that has been administratively exhausted.   Defendant argues that Plaintiff is procedurally barred from asserting any other claims because he failed to exhaust his administrative remedies with respect to such claims and they were not timely filed.   Furthermore, Defendant asserts that Plaintiff is unable to establish a *prima facie* case of retaliation with respect to the non-renewal of his contract, and even if he could, he cannot show that Defendant's legitimate, non-retaliatory reasons were mere pretext.

Plaintiff filed a motion to commence discovery (Paper 15) that is opposed by Defendant (Paper 17).

## II.  Standard of Review

Defendants have moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56.   A court considers only the pleadings when deciding a Rule 12(b)(6) motion.   Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment.   *See* Fed.R.Civ.P. 12(b); *Gadsby by Gadsby v. Grasmick*,

109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56©; *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her

claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. Exhaustion of Administrative Remedies

Before an employee may pursue a claim against a federal employer under Title VII, he must first exhaust the available administrative remedies by proceeding before the agency charged with the discrimination. *See* 42 U.S.C. § 2000e-16(c); *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 968-69 (4th Cir. 1985); 24 C.F.R. § 1614.110. Indeed, "the purpose of exhaustion is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer." *Wade v. Secretary*

5

*of the Army*, 796 F.2d 1369, 1377 (11th Cir. 1986).   Regulations governing complaints against federal agencies are found in 29 C.F.R. § 1614.   In particular, § 1614.105(a)(1) requires than an employee consult the agency's Equal Employment Opportunity ("EEO") counselor within 45 days "of the date of the matter alleged to be discriminatory, or in the case of a personnel action, within 45 days of the effective date of the action."   29 C.F.R. § 1614.105(a)(1).   Failure to comply with this time limitation is grounds for dismissal.   *Zografov*, 779 F.2d at 970; *Boarman v. Sullivan*, 769 F.Supp. 904, 908 (D.Md. 1991).

"Even after a plaintiff has exhausted his administrative remedies, the administrative framework plays a substantial role in focusing the formal litigation it precedes."   *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).   If "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred."   *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).   Consequently, "[t]he allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."   *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996).   The United States Court of Appeals for the Fourth Circuit is "clear that the factual allegations made in formal litigation must correspond to those set forth in the administrative

charge." *Chacko*, 429 F.3d at 509.   Because Title VII retaliation claims sometimes are related to and grow out of allegations contained in an EEOC charge, at times they may be appropriately raised for the first time in federal court.  *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992).   This rule recognizes that a plaintiff may be reluctant to again report to the EEO counselor after his employer has taken action against him for filing the first charge.  *Id.*

Here, however, Plaintiff could have included the other alleged acts of retaliation in his original charge.  Plaintiff made initial contact with an EEO counselor regarding the retaliation claim on November 17, 2005 via a letter from counsel.  (Paper 16, Ex. 1) (stating "consider this letter official notification and correspondence with an EEO counselor within 45 days of the subject event.").  The sole act of retaliation identified in the letter was the non-renewal of Plaintiff's staff scientist contract.  (*Id.*). The other alleged acts of retaliation asserted in Plaintiff's complaint occurred prior to November 17, 2005, yet they were not identified in the letter to the EEO counselor.[1]  This court has previously held that a plaintiff must exhaust his administrative

---

[1]  The alleged retaliatory acts discussed in the complaint but omitted from the letter are: (1) falsely accusing Plaintiff of insubordination on February 17, 2005 and April 21, 2005 (Paper 1 ¶ 15); (2) issuing a written reprimand to Plaintiff on May 27, 2004 (*id.* ¶ 17); (3) and refusing to interview him for new positions (*id.* ¶ 19).

remedies in order to properly file a civil suit when the alleged retaliation could have been raised in the original EEO charge. *See, e.g., Allen v. Rumsfeld*, 273 F.Supp.2d 695, 704 (D.Md. 2003); *Riley v. Tech. & Mgmt. Svcs., Inc.*, 872 F.Supp. 1454, 1459-60 (D.Md. 1995), *aff'd*, 79 F.3d 1141 (4th Cir. 1996).  The other alleged acts of retaliation occurred prior to Plaintiff's first contact with the EEO counselor, and they could have been raised at that time.  The rationale for the rule that sometimes allows claims for retaliation to be raised for the first time in federal court does not apply in this case.

The next question is whether, as Plaintiff alleges, these acts of retaliation are actually included in the scope of his first claim.  In Plaintiff's formal complaint of employment discrimination, filed January 13, 2006, the only act of retaliation he identified was Defendant's decision not to renew his appointment as a staff scientist.  Accordingly, the only issue formally identified and accepted for investigation by the EEO counselor was Defendant's decision not to renew Plaintiff's staff scientist appointment.  (Paper 16, Ex. 6).  Plaintiff was notified of his right to amend the complaint with issues or claims that are "like or related" to the original complaint (*id.* at 2), but Plaintiff never sought to amend his complaint nor did he challenge the issue accepted for investigation.

Plaintiff asserts that because he included the other acts of retaliation in an affidavit he submitted to the EEO counselor on April 7, 2006, those acts should be included in the scope of his charge of discrimination.  Plaintiff cites to *Afande v. Nat'l. Lutheran Home for the Aged*, 868 F.Supp. 795 (D.Md. 1994), for the proposition that claims raised in an affidavit but not in the charge itself may be included in the scope of the charge.  In *Afande*, the plaintiff signed the affidavit the same day she filed the EEOC charge and the court found that "[f]rom all indications, EEOC received the affidavit as a part of its record and used the affidavit to determine the scope of its investigation." *Afande*, 868 F.Supp. at 800.  Here, Plaintiff submitted the affidavit nearly four months after filing his formal charge of discrimination.  He was aware of the sole issue accepted for investigation and never sought to amend his complaint.  Furthermore, there is no indication that the EEO counselor used the facts alleged in Plaintiff's declaration to determine the scope of its investigation.  The final decision from the agency identified the claim narrowly:  "On November 7, 2005, [Plaintiff] received a retaliatory letter informing him his five year appointment as Staff Scientist would not be renewed." (Paper 16, Ex.  38).

The only claim Plaintiff properly exhausted was his allegation that his five year contract as a staff scientist was not renewed in

retaliation for his prior EEO activity.[2]   *See Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (holding that plaintiff who took no official action to amend her administrative charge of discrimination had not exhausted administrative remedies with respect to claim not included in the original charge). Defendant's motion for summary judgment on the other allegations of retaliation - specifically, accusing Plaintiff of insubordination on February 17, 2005 and April 21, 2005, issuing a written reprimand to Plaintiff on May 27, 2004, and refusing to interview Plaintiff for new positions - will be granted.

## IV.   Retaliation Claim

Plaintiff alleges that his appointment as a staff scientist was not renewed in retaliation for his prior EEO activity.  Section 704(a) of Title VII prohibits an employer from taking an adverse employment action against any employee "because he has opposed any practice made an unlawful employment practice under this subchapter."  42 U.S.C. § 2000e-3(a).  Under the burden-shifting framework first formulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff bears the initial burden of establishing a *prima facie* case of retaliation. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 258 (4th

---

[2]   It is likely that the additional claims of retaliation would also be barred as untimely.  Because Plaintiff has failed to exhaust his administrative remedies with respect to those claims, however, it is not necessary to reach the issue of timeliness.

Cir. 1998) (citing *McDonnell Douglas*, 411 U.S. at 802-04).   Once
this burden is carried, the burden shifts to the defendant, who is
obliged to articulate a legitimate, non-retaliatory justification
for the adverse employment action.   *See id.*   If the defendant
carries this burden, the onus is on the plaintiff to then
demonstrate that the non-retaliatory reason advanced by the
defendant is a mere pretext. *See id.; see also Reeves v. Sanderson
Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

A *prima facie* case for retaliation consists of evidence that
(1) the plaintiff engaged in protected activity, (2) the employer
took an action that a reasonable employee would have found
materially adverse,[3] and (3) a causal connection existed between

---

[3] The second element was recently broadened by the Supreme
Court:
> Recently, in *Burlington N. & Sante Fe Ry. Co.
> v. White*, ---U.S. ----, 126 S.Ct. 2405, 165
> L.Ed.2d 345 (2006), the Supreme Court rejected
> our circuit's formulation of the second
> element of the prima facie case. The Court
> held that "the anti-retaliation provision ...
> is not limited to discriminatory actions that
> affect the terms and conditions of
> employment." *Id*. at 2412-13.   The
> anti-retaliation provision, the Court said,
> "protects an individual not from all
> retaliation, but from retaliation that
> produces an injury or harm." *Id*. at 2414.
> Thus, "a plaintiff must show that a reasonable
> employee would have found the challenged
> action materially adverse, which in this
> context means it well might have dissuaded a
> reasonable worker from making or supporting a
> charge of discrimination." *Id*. at 2415
> (quotation marks and citations omitted).

*Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

11

the protected activity and the adverse action. Defendant challenges Plaintiff's ability to prove causation, arguing that there is no permissible inference of causation because the decision makers were different and the length of time between the prior protected activity and the alleged retaliatory action is too long.[4]

The court agrees that Plaintiff's prima facie case is, at best, extremely weak, given the entire history of Plaintiff's relationship with Defendant and the ambiguity of the record concerning what steps in the prior EEO activity Dr. Berzofsky knew of, and when, and precisely when Plaintiff contends the retaliatory animus became apparent. The prima facie proof requirement is not, however, supposed to be "onerous," *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981), and analysis will proceed on the assumption that Plaintiff has established a *prima facie* case of retaliation. As will be seen, however, he cannot survive summary judgment because he cannot rebut Defendant's legitimate, non-retaliatory reasons for deciding not to renew his contract.

Defendant states that the decision not to renew Plaintiff's contract was based on "a number of incidents of misconduct involving confrontational behavior and repeated incidents of outright insubordination and refusal to follow [his] supervisor's orders dating back several years." (Paper 16, Ex. 9, Berzofsky

---

[4] There is no question that Plaintiff engaged in protected activity and suffered an adverse action.

Decl., at 3).   In May 2005, Dr. Berzofsky issued Plaintiff a written reprimand detailing his concerns with Plaintiff's behavior. The written reprimand detailed five specific instances of Plaintiff's insubordinate behavior from February through May 2005, and one incident from September 2002.   In addition, the reprimand explained why Plaintiff's behavior was problematic.

> You have repeatedly demonstrated an inability to control your temper, and have repeatedly made relentless and extended and often heated arguments over minor issues. This is conduct unbecoming to a Staff Scientist, and interferes with your ability to carry out your assignments and to interact with your supervisor, other members of the laboratory and branch, and other collaborators.    This misconduct thus interferes with the mission of the Vaccine Branch and the Center for Cancer Research, NCI, and is completely unacceptable.
> These incidents seem to have become more frequent over the past year, and multiple such incidents have occurred in the past 3-4 months. . . . Further, your confrontational and intimidating behavior has already made it more difficult for me to collaborate with the labs of Dr. Veffa Franchini and Dr. Thomas Waldmann in NCI and Dr. Bernard Moss in NIAID. Thus, you are impeding my efforts to promote more interactions within the Vaccine Branch as well as with other collaborators.    Your behavior is adversely affecting the reputation of my laboratory, and impeding scientific progress and the accomplishment of the mission of the Vaccine Branch and [sic] well as the Center for Cancer Research, NCI, NIH.

(Paper 16, Ex. 21, at 1 & 4).   Dr. Berzofsky stated that because of Plaintiff's insubordinate and rude behavior he decided that he could no longer work with Plaintiff.   (*Id*. Ex. 9, Berzofsky Decl.,

at 6).  Dr. Berzofsky was advised by Maria Gorrasi, Employee and Labor Relations Specialist, that rather than take action to remove Plaintiff from his laboratory, Dr. Berzofsky could decline to renew Plaintiff's five year contract.  (*Id.*).

Plaintiff's ability, or lack thereof, to work amicably with others was a legitimate factor for Defendant to consider when deciding whether to renew his contract.  *See Hux v. City of Newport News, Va.*, 451 F.3d 311, 318 (4th Cir. 2006) (quoting *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1130 (4th Cir. 1995) for proposition that an employer can "properly take into account" factors such as "good interpersonal skills and . . . ability to lead a team.").

Plaintiff argues that Defendant's reason must be pretext because he was never insubordinate and his behavior has remained constant over the past eight years.  (Paper 18, at 14).  Plaintiff further asserts that Dr. Berzofsky's treatment of him changed once Plaintiff filed his federal lawsuit.  Plaintiff's difficulty working with others was well documented.  Dr. Berzofsky testified that in 1996, when he was considering hiring Plaintiff, University of Alabama faculty members who had supervised Plaintiff during his first postdoctoral fellowship told him that Plaintiff had a history of being difficult to work with.  (Paper 16, Ex. 9, Berzofsky Decl., at 3).  Dr. Berzofsky decided to hire Plaintiff despite these warnings because he thought his professional accomplishments

14

outweighed his interpersonal shortcomings. (*Id.*). Dr. Berzofsky acknowledged that Plaintiff had difficultly getting along with other postdoctoral fellows once he joined his laboratory. (*Id.*). Dr. Berzofsky's decision to hire Plaintiff for the staff scientist position in 2001 was in direct contrast to the recommendation of his supervisor, Dr. Thomas Waldmann, who strongly recommended that he not hire Plaintiff because of his difficulty working with others. (*Id.* at 4). In Plaintiff's 2004 performance evaluation, Dr. Berzofsky noted that Plaintiff needed "to practice being more diplomatic, especially in group settings, and not to make minor misunderstandings into big issues." (Paper 16, Ex. 35). Plaintiff's 2005 performance evaluation stated that his job performance had declined over the past year due to misconduct, he refused to follow his supervisor's instructions, and his disrespectful treatment of his colleagues and supervisor had a negative impact on the morale of the laboratory. (Paper 16, Ex. 36). Maria Gorrasi, Employee and Labor Relations Specialist, testified that her office was contacted in January 2005 by Dr. Berzofsky concerning problems with Plaintiff's behavior. (Paper 16, Ex. 11, Gorrasi Decl., at 1). She stated that Plaintiff often challenged Dr. Berzofsky's authority, sometimes in front of other employees. (*Id.* at 2). In the May 2005 official reprimand, Dr. Berzofsky noted specifically that Plaintiff's insubordinate behavior had worsened over the past year. (*Id.* Ex. 21, at 1).

To rebut Defendant's overwhelming evidence that Plaintiff's behavior was disruptive and damaging to Dr. Berzofsky's laboratory, Plaintiff offers merely his own assertion that he was not insubordinate and that his behavior was consistent over the eight years he was supervised by Dr. Berzofsky. (Paper 18, Ex. 1, Belyakov Decl. ¶¶ 12-13). Plaintiff's own assertions, without more, are insufficient to establish pretext. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989) ("a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action."). Plaintiff has failed to show that the legitimate, non-retaliatory reasons offered by Defendant for not renewing his contract were mere pretext, and summary judgment is appropriate.

**V. Motion to Commence Discovery**

Because Plaintiff has not produced evidence sufficient to withstand summary judgment, it is necessary to address his motion to commence discovery. (Paper 15). Generally speaking, "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250 n. 5.; Fed.R.Civ.P. 56(f). "'Sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party"' and when a case involves complex factual questions

16

about intent and motive.  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 247 (4th Cir. 2002), quoting 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2741 at 241 (3rd ed. 1998).

A party opposing summary judgment may not merely assert that discovery is necessary.  Rather, the party must file an affidavit that "particularly specifies legitimate needs."  *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995).[5]  As this court has noted, a request for discovery will not be granted if the party merely wishes to conduct a "fishing expedition" in search for evidence that may be helpful.  *Morrow v. Farell*, 187 F.Supp.2d 548, 551 (D.Md. 2002).  In addition to the specificity requirement, a party must present reasons why it cannot put forth the necessary opposing evidence, *see Pine Ridge Coal Co. v. Local 8377, United Mine Workers of Am.*, 187 F.3d 415, 421-22 (4th Cir. 1999), and must establish that the desired evidence could be sufficient to create a genuine issue of material fact.  *See McLaughlin v. Murphy*, 372 F.Supp.2d 465, 470 (D.Md. 2004).  If a party meets this burden, "the court may refuse the application for judgment or may order a

---

[5] An affidavit may not be absolutely necessary if the party makes objections that satisfy the purpose of providing an affidavit and is not lax in pursuing discovery.  *Harrods Ltd.*, 302 F.3d at 244; *Chernova v. Elec. Sys. Servs., Inc.*, 247 F.Supp.2d 720, 723 (D.Md. 2003) (noting an affidavit is not absolutely necessary to satisfy Rule 56(f), but movant must show that 56(f) protections are invoked in good faith and to "afford the trial court the showing necessary to assess the merit of a party's opposition").

continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."  Fed.R.Civ.P. 56(f).

Plaintiff argues in his motion to commence discovery that the chances of the entire case being dismissed are very small and discovery should commence to promote judicial efficiency. Plaintiff wholly fails to "particularly specify legitimate needs." *Nguyen*, 44 F.3d at 242.  Moreover, Plaintiff does not present any reason why he cannot put forth the necessary opposing evidence, or establish that the desired evidence could be sufficient to create a genuine issue of material fact.  *See Pine Ridge Coal Co.*, 187 F.3d at 421-22.  In fact, this case was investigated at the administrative level, and pursuant to the Order denying joinder (paper 14), the parties are entitled to use discovery taken in DKC 04-4008 in this case.  Thus, a wealth of information is already available.  Plaintiff's motion to commence discovery will be denied.

## VI.  Conclusion

For the foregoing reasons, the court will grant Defendant's motion for summary judgment and deny Plaintiff's motion to commence discovery.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge